UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
RONALDO GARCIA, *individually and on behalf of others similarly situated*,

                      Plaintiff,

      - against -

SKECHERS USA RETAIL, LLC,

                      Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
23-CV-1055 (PKC) (JAM)

PAMELA K. CHEN, United States District Judge:

Plaintiff Ronaldo Garcia ("Plaintiff" or "Garcia"), individually and on behalf of others similarly situated, brings this action against Defendant Skechers USA Retail, LLC ("Defendant" or "Skechers") under New York Labor Law ("NYLL") §§ 191 and 196. Presently before the Court is Defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6). For the reasons that follow, Defendant's motion is denied in its entirety.

## BACKGROUND

**I.**    **Factual Allegations**[1]

Plaintiff was employed by Defendant as a stockroom associate from approximately April 2021 until June 2021 at one of Skechers' locations in Queens, New York. (Compl., Dkt. 1, ¶ 7.) While employed by Defendant, Plaintiff typically performed physical tasks for more than 25% of his workday. (*Id.* ¶ 8.) His responsibilities included "lifting and moving heavy boxes in furtherance of shipping, receiving, picking, packing, and loading and unloading shipments." (*Id.*)

---

[1] For the purposes of Defendant's Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor." *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022); *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 90–91 (2d Cir. 2021) (same).

Throughout the entirety of his employment, Plaintiff was compensated on a bi-weekly, rather than weekly, basis. (*Id.* ¶ 9.) This injured Plaintiff "in that he was temporarily deprived of money owed to him, and he could not save, invest, earn interest on, or otherwise use [the] monies that were rightfully his." (*Id.* ("[E]very day that said money was not paid to him in a timely fashion, [Plaintiff] lost the time value of that money.").) By failing "to pay Plaintiff and other employees who worked in manual labor positions their wages earned within seven days of the end of their workweeks, Defendant deprived the employees of the use of money that belonged to them." (*Id.* ¶ 10.) Consequently, Plaintiff and other employees like him "were unable to do those things that every person does with their money, such as paying bills or buying goods that they needed and/or wanted to buy." (*Id.*; *see also id.* ¶ 11 ("[O]wing to the delinquency of these payments, Plaintiff and putative class members were prevented from spending money earned on a bevy of everyday expenses and to provide for their basic needs, including but not limited to, purchasing food and groceries, making rent or mortgage payments, settling bills for utilities, medical supplies and services, insurance, automobile payments, and other basic living expenses.").)

Conversely, Defendant, by retaining wages that were rightfully owed to Plaintiff and other similarly situated employees, benefited "from the time value of the money at issue, and the free use of such funds, at the expense of Plaintiff and putative class members." (*Id.* ¶ 12.) For example, Defendant "was free to utilize [the withheld] funds to purchase goods and services, as well as save, invest, or earn interest on them." (*Id.*)

## II. Procedural History

Plaintiff filed this action on February 8, 2023, on behalf of himself and a putative class of similarly situated employees. (*See generally* Compl.) The Complaint alleges that Defendant

violated NYLL § 191(1)(a) ("Section 191") by failing to pay Plaintiff and members of the putative class on a timely basis.[2] (*Id.* ¶¶ 23–26.)

On April 7, 2023, Defendant requested a pre-motion conference ("PMC") to discuss an anticipated motion to dismiss. (*See* Dkt. 7.) Plaintiff responded to oppose the PMC request on April 13, 2023. (*See* Dkt. 8.) The Court granted Defendant's request and held a PMC with the parties on June 1, 2023. (*See* 5/2/2023 Docket Order; 6/1/2023 Min. Entry.) The motion was fully briefed as of August 22, 2023. (*See* Dkts. 13–17.)

On January 23, 2024, Defendant filed a letter to call the Court's attention to *Grant v. Global Aircraft Dispatch, Inc.*, 204 N.Y.S.3d 117 (N.Y. App. Div. 2024), a recent decision from the New York Supreme Court, Appellate Division, Second Department. (*See* Dkt. 19.) Subsequently, Plaintiff filed letters informing the Court about three other relevant decisions, *Zachary v. BG Retail, LLC*, No. 22-CV-10521 (VB), 2024 WL 554174 (S.D.N.Y. Feb. 12, 2024), *Gamboa v. Regeneron Pharmaceuticals, Inc.*, No. 22-CV-10605 (KMK), 2024 WL 815253 (S.D.N.Y. Feb. 27, 2024); and *Bazinett v. Pregis LLC*, 23-CV-790 (MAD), 2024 WL 1116287 (N.D.N.Y. March 14, 2024). (Dkts. 24–26.)

## LEGAL STANDARDS

### I. FRCP 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under [FRCP] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). To survive a motion to dismiss for lack of

---

[2] The Complaint also asserts a cause of action alleging that Defendant failed to provide the notice required by NYLL § 195(1)(a) upon hiring. (*Id.* ¶¶ 27–31.) However, Plaintiff withdrew this claim after Defendant produced documentary evidence demonstrating that the factual allegations underlying it were mistaken. (*See* Dkt. 8 at 1 n.1.)

standing, the "plaintiff must allege 'facts that affirmatively and plausibly suggest that it has standing to sue.'" *Reyes v. Sofia Fabulous Pizza Corp.*, No. 13-CV-7549 (LAK) (JCF), 2014 WL 12768922, at *2 (S.D.N.Y. Apr. 7, 2014) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)), *R. & R. adopted*, 2014 WL 1744254 (S.D.N.Y. Apr. 24, 2014).

## II.   FRCP 12(b)(6)

To survive a motion to dismiss under FRCP 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The pleading standard does not require detailed factual allegations, but still "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. In addressing the sufficiency of a complaint, a court "accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [it is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hamilton*, 3 F.4th at 90–91.

## DISCUSSION

## I.   Plaintiff Has Article III Standing

To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v.*

4

*Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). An injury in fact must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560).

Although Defendant contends that Plaintiff has failed to demonstrate that he suffered "a concrete harm," the Court disagrees. (Def.'s Br. in Supp. of Mot. to Dismiss ("Def.'s Br."), Dkt. 15, at 2.) Plaintiff specifically alleges that he was injured by Defendant's conduct "in that he was temporarily deprived of money owed to him, and he could not save, invest, earn interest on, or otherwise use [the] monies that were rightfully his." (Compl. ¶ 9; *see also id.* (alleging that "every day that said money was not paid to him a timely fashion, he lost the time value of that money").) Plaintiff also alleges that, as a result of Defendant's late payments, Plaintiff and other Skechers employees like him "were unable to do those things that every person does with their money, such as paying bills or buying goods that they needed and/or wanted to buy." (*Id.* ¶ 10.) For example, "Plaintiff and putative class members were prevented from spending money earned on a bevy of everyday expenses and to provide for their basic needs, including but not limited to, purchasing food and groceries, making rent or mortgage payments, settling bills for utilities, medical supplies and services, insurance, automobile payments, and other basic living expenses." (*Id.* ¶ 11.)

Courts in the Second Circuit have consistently held that the late payment of wages is a concrete harm. *E.g.*, *Georgiou v. Harmon Stores, Inc.*, No. 22-CV-02861 (BMC), 2023 WL 112805, at *1–2 (E.D.N.Y. Jan. 5, 2023); *Jones v. Nike Retail Servs., Inc.*, No. 22-CV-3343 (PKC), 2022 WL 4007056, at *1 (E.D.N.Y. Aug. 30, 2022); *Confusione v. Autozoners, LLC*, No. 21-CV-1 (JMA) (AYS), 2022 WL 17585879, at *1 (E.D.N.Y. Dec. 12, 2022); *Caul v. Petco Animal Supplies, Inc.*, No. 20-CV-3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sept. 27, 2021); *Zachary v. BG Retail, LLC*, No. 22-CV-10521 (VB), 2024 WL 554174, at *3–4 (S.D.N.Y. Feb.

12, 2024); *Pozo v. BlueMercury, Inc.*, No. 22-CV-7382 (VEC), 2023 WL 4980217, at *1–2 (S.D.N.Y. Aug. 3, 2023); *Nunez v. Exec. Le Soleil N.Y. LLC*, No. 22-CV-4262 (KPF), 2023 WL 3319613, at *3–4 (S.D.N.Y. May 9, 2023).[3] As the Honorable Rachel P. Kovner explained in *Cual v. Petco Animal Supplies*, "[t]emporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing" because "[e]very day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money." 2021 WL 4407856, at *4 (cleaned up); *see also Georgiou*, 2023 WL 112805, at *1 (explaining that the "delay in receiving wages stripped plaintiff of the opportunity to use funds to which she was legally entitled resulting in an injury sufficiently analogous to harms traditionally recognized at common law" (cleaned up)); *Stephens v. U.S. Airways Grp., Inc.*, 644 F.3d 437, 442 (D.C. Cir. 2011) (Kavanaugh, J., concurring) ("Money later is not the same as money now."). "That injury is especially acute for those workers 'who are generally dependent upon their wages for sustenance.'" *Cual*, 2021 WL 4407856, at *4 (quoting *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 107 N.Y.S.3d 286, 289 (N.Y. App. Div. 2019)). Here, Plaintiff "goes beyond what is required by Supreme Court and Second Circuit precedent, and alleges delayed wages prevented [him] . . . from spending money on everyday expenses such as groceries, rent, and mortgage payments." *See Zachary*, 2024 WL 554174, at *4; *Macchiavello*, 2023 WL 4625009, at *4.

---

[3] *See also, e.g.*, *Macchiavello v. ABB/CON-CISE Optical Grp. LLC*, No. 22-CV-8468 (VB), 2023 WL 4625009, at *3–4 (S.D.N.Y. July 19, 2023); *Gillett v. Zara USA, Inc.*, No. 20-CV-3734 (KPF), 2022 WL 3285275, at *6–7 (S.D.N.Y. Aug. 10, 2022); *Rankine v. Levi Strauss & Co.*, No. 22-CV-3362 (LTS), 2023 WL 3582323, at *3–4 (S.D.N.Y. May 22, 2023); *Freeland v. Findlay's Tall Timbers Distrib. Ctr., LLC*, No. 22-CV-6415 (FPG), 2023 WL 4457911, at *5–8 (W.D.N.Y. July 11, 2023); *Petrosino v. Fastenal Co.*, No. 22-CV-705 (MAD) (DJS), 2023 WL 3496362, at *3–4 (N.D.N.Y. May 17, 2023).

Rather than confront "the myriad decisions concluding that [the] lost time value of money is a sufficiently concrete injury to support standing," *Freeland*, 2023 WL 4457911, at *7, Defendant presents a purportedly novel argument based on the statutory scheme itself. (*E.g.*, Def.'s Reply in Supp. of Mot. to Dismiss ("Def.'s Reply"), Dkt. 17, at 1.) According to Defendant, because "the [NYLL] permits employers to pay manual workers at large employers or not-for-profits on a less than weekly basis, manual workers cannot claim they possess a *right* to be paid on a weekly basis," nor can manual workers claim that they "suffered a deprivation under the law by being paid bi-weekly." (Def.'s Br. at 1–2; *see also id.* at 4–5 ("Plaintiff cannot contend that he suffered a deprivation if the statute permits employers to pay similarly situated manual workers on a less than weekly basis.").) Tellingly, Defendant cites no cases that directly support this principle and instead cobbles together a collection of authorities that are, at best, tangentially relevant to the case at hand. (*See id.* at 6–9.) The Court is not persuaded. As discussed above, Plaintiff alleges that Defendant's late payments caused him concrete harm—harm that has been uniformly recognized in the Second Circuit—which makes his claim materially distinct from a wage-notice claim premised entirely on a technical statutory violation. (*See* Def.'s Br. at 8–9 (citing *Sevilla v. House of Salads One LLC*, No. 20-CV-6072 (PKC) (CLP), 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022); *Wang v. XBB, Inc.*, No. 18-CV-7341 (PKC) (ST), 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022); *Perez v. Postgraduate Ctr. for Mental Health*, No. 19-CV-0931 (EK) (PK), 2021 WL 3667054, at *7 (E.D.N.Y. Aug. 18, 2021)).) Defendant's reliance on *Taylor v. Federal Aviation Administration*, 351 F. Supp. 3d 97, 103 (D.D.C. 2018), fares no better. (*See* Def.'s Br. at 7.) That case, which is not binding on this Court, did not decide whether "the lost time value of money could suffice to make out an Article III injury," and instead found that the plaintiff's "bare allegation" that he was deprived of the use of the funds at issue "set[] out an injury

7

that is too abstract and indefinite to confer Article III standing." *Taylor*, 351 F. Supp. 3d at 103 (internal quotation marks and citation omitted).[4]

In the end, Defendant's unsupported theory about the invalidity of the weekly pay requirement for manual workers is contradicted by our overall system of laws and regulations. It is entirely within the legislature's prerogative to enact laws that impose requirements on some employers, but not others, provided that such laws are constitutionally sound. That is precisely what the New York State Legislature did when it passed the law at issue here, which includes numerous carveouts and specifications for employers based on the type of industry and size. *See, e.g.*, N.Y. Lab. Law § 191(1)(b) (requiring railroad workers to "be paid on or before Thursday of each week the wages earned during the seven-day period ending on Tuesday of the preceding week"). Indeed, there are countless state and federal laws on the books that fit this description, including but not limited to the employment discrimination provisions of the Americans with Disabilities Act ("ADA"), which apply to employers with fifteen or more employees. *See* 42 U.S.C. §§ 12111(5)(A), 12112(a); *see also, e.g.*, 29 U.S.C. §§ 623, 630(b) (prohibiting employers with 20 or more employees from discriminating against employees based on age); *id.* §§ 2611(4), 2612 (requiring employers with 50 or more employees to provide eligible employees with leave for family and medical reasons). And while an employee who has experienced discrimination based on a disability at the hands of a smaller employer might not have a cause of action under the

---

[4] Defendant also cites to *Vizcaino v. Microsoft Corp.*, 120 F.3d 1006 (9th Cir. 1997). Without providing any examples, Defendant states that this case "has long been cited for the proposition that two workers who work in the same position must be treated the same under the law." (Def.'s Br. at 6.) However, *Vizcaino* addressed the question of whether employees who were erroneously classified as independent contractors were entitled to participate in their employer's benefit plans, and is wholly inapposite to the case at hand. *See* 120 F.3d at 1009. Furthermore, although Defendant cites *Vizcaino* to support its argument that employees who work for *different* employers should be treated the same, *Vizcaino* actually dealt with employees who worked for *the same employer*.

ADA, that does not mean that the employee did not suffer a concrete harm. Although Defendant might disagree with these laws, that certainly does not mean that these laws are invalid, nor does it mean that Plaintiff has not suffered a concrete injury as a result of Defendant's alleged violation of the weekly-payment requirement under Section 191.

II.     **Section 191 of the NYLL Confers a Private Right of Action**

Defendant also argues that Plaintiff's Section 191 claim must be dismissed because the statute does not confer a private right of action. Once again, the Court disagrees.

Section 191, which is in article 6 of the NYLL, provides: "A manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned." N.Y. Lab. Law § 191(1)(a)(i). Separately, under NYLL § 198(1-a) ("Section 198(1-a)"), "[a]n employee who is 'paid less than the wage to which . . . she is entitled' under the provisions of article 6 may bring a 'wage claim' . . . 'to recover the full amount of any underpayment' as well as 'reasonable attorney's fees, prejudgment interest . . . and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law,' an additional payment of 'liquidated damages equal to one hundred percent of the total amount of the wages found to be due.'" *Zachary*, 2024 WL 554174, at *5 (quoting N.Y. Lab. Law § 198(1-a)).

In *Vega v. CM & Associates Construction Management, LLC*, the Appellate Division, First Department held that Section 191 and Section 198 confer an express private right of action for claims arising out of the untimely payment of wages. 107 N.Y.S.3d at 288 ("[Section] 198(1-a) expressly provides a private right of action for a violation of [Section 191].") In reaching this decision, the court specifically found that the term "underpayment" in Section 198(1-a) "encompasses the instances where an employer violates the frequency requirements of [Section 191(1)(a)] but pays all wages due before the commencement of an action." *Id.* ("We reject

9

defendant's implicit attempt to read into [S]ection 198(1-a) an ability to cure a violation and evade the statute by paying the wages that are due before the commencement of an action."). The court further held that "even if [Section] 198 does not expressly authorize a private action for violation of the requirements of [Section] 191, a remedy may be implied since plaintiff is one of the class for whose particular benefit the statute was enacted, the recognition of a private right of action would promote the legislative purpose of the statute and the creation of such a right would be consistent with the legislative scheme." *Id.* at 288–89 (citations omitted). To date, nearly "every New York court in the Second Circuit has adopted [*Vega*'s] holding." *See Gamboa*, 2024 WL 815253, at *4 (collecting cases). *But see Galante v. Watermark Servs. IV, LLC*, No. 23-CV-6227 (FPG), 2024 WL 989704, at *8 (W.D.N.Y. Mar. 7, 2024) (concluding that Section 198(1-a) does not provide a private right of action for violations of Section 191).

Recently, however, in *Grant v. Global Aircraft Dispatch, Inc.*, the Appellate Division, Second Department held that Section 198(1-a) provides neither an express nor implied private right of action for manual workers who have been paid on a biweekly, rather than weekly, basis. 204 N.Y.S.3d at 125. Contrary to *Vega*, the Second Department found that "[t]he plain language of [Section] 198(1-a) supports the conclusion that this statute is addressed to nonpayment and underpayment of wages, as distinct from the frequency of payment[.]" *Id.* at 122 ("We respectfully disagree with the reasoning of *Vega* and decline to follow it . . . . [W]e do not agree that payment of full wages on the regular biweekly payday constitutes nonpayment or underpayment."). The Second Department also found that Section 198's legislative history revealed that the statute "was aimed at remedying employers' failure to pay the amount of wages required by contract or law," and contained no reference to "the frequency or timing of wage payments." *Id.* at 125. Finally, the court concluded that no private right of action could be implied due to the existence of

10

"multiple official enforcement mechanisms for violations of [Section] 191." *Id.* (citing *Konkur v. Utica Acad. of Sci. Charter Sch.*, 185 N.E.3d 483 (N.Y. 2022)).

Thus, New York courts currently are split as to whether Section 191, together with Section 198, confers a private right of action, and the New York Court of Appeals has not yet addressed this question. *Zachary*, 2024 WL 554174, at *5. A federal court applying state law is "generally obliged to follow the state law decisions of state intermediate appellate courts." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199–200 (2d Cir. 2005) (quoting *Pentech Int'l, Inc. v. Wall St. Clearing Co.*, 983 F.2d 441, 445 (2d Cir. 1993)). However, "when there is 'an apparent split in authority among the Appellate Divisions,' a federal court is not bound by the law of the department that would apply if the case were filed in state court where the federal court sits, but rather must predict 'how the Court of Appeals would rule.'" *Zachary*, 2024 WL 554174, at *5 (quoting *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116–17 (2d Cir. 2000)). Since *Grant*, several other courts in the Second Circuit have addressed the question of whether Section 191 confers a private right of action, most of which have concluded that the New York Court of Appeals would likely agree with *Vega*. *E.g.*, *Zachary*, 2024 WL 554174, at *7; *Gamboa*, 2024 WL 815253, at *6; *Bazinett*, 2024 WL 1116287, at *7. *But see Galante*, 2024 WL 989704, at *8. The Court is persuaded by the analysis in *Zachary* and *Gamboa*, and reaches the same conclusion here.

As to an express private right of action, this Court agrees "that an employee is underpaid within the meaning of Section 198 each time her employer is required, under Section 191, to pay her for one week of wages and instead pays her nothing on that date." *Zachary*, 2024 WL 554174, at *7. "Although Section 198 does not explicitly reference late wage payments, its text authorizes employees to bring 'wage claims' for 'underpayment[s]' violative of article 6 of the NYLL, and

11

article 6 includes the pay frequency requirements in Section 191." *Id.* Thus, the "absence of language in Section 198 addressing late payments is irrelevant" because late payments are encompassed in Section 198's reference to "underpayments" in violation of article 6 of the NYLL. *Id.* This conclusion is further supported by the plain language of Section 191, which provides that "[n]o employee shall be required as a condition of employment to accept wages at periods other than as provided in this section." N.Y. Lab. Law § 191(2). As the Honorable Vincent L. Briccetti explained in *Zachary*, "[a] judge's belief that a manual worker should be able to agree to a different payment schedule, and that such agreement should obviate an employer's liability for failing to comply with the law, does not override an overt legislative judgment to the contrary." *Zachary*, 2024 WL 554174, at *8. Despite *Grant*'s contrary assertion, the legislative history also supports this interpretation. "[M]oney has a real time value, and the 2010 amendments to Section 198 were intended to allow employees 'to recover the full amount of any underpayment.'" *Id.* (quoting *Grant*, 204 N.Y.S.3d at 121) (noting acknowledgement of these facts in *Grant*). Moreover, "the stated legislative purposes of the 2010 amendments—*i.e.*, to enhance penalties for wage theft and [to] benefit low-wage workers struggling to support their families—are unquestionably better served by a private right to enforce Section 191 than by requiring injured employees to submit administrative complaints and hope for an official enforcement action." *Id.*

The conclusion in *Grant* that an implied private right of action would be inconsistent with the overall legislative scheme is thus similarly misplaced. *See Grant*, 204 N.Y.S.3d at 124–25. Notably, this portion of *Grant* is based on *Konkur v. Utica Academy of Science Charter School*, in which the New York Court of Appeals declined to find an implied private right of action in the provision of the NYLL prohibiting wage kickbacks. *Id.*; *see generally Konkur*, 185 N.E.3d 483. "However, in *Konkur*, the Court of Appeals specifically distinguished the anti-kickback statute,

12

from which a private right could not be inferred, from the 'substantive provisions of Labor Law article 6,' like Section 191[.]" *Zachary*, 2024 WL 554174, at *8 (quoting *Konkur*, 185 N.E.3d at 487). And, as the concurring opinion in *Grant* points out, finding an implied private right of action would be consistent with the legislative scheme, in that Section 198 "explicitly provides" that individuals may bring suit against an employer for violations of article 6 "even if the Commissioner chooses not to do so." *Grant*, 204 N.Y.S.3d at 128–29 (Christopher, J., concurring in part); *see also* N.Y. Lab. Law § 198(2) ("The remedies provided by this article may be enforced simultaneously or consecutively so far as not inconsistent with each other."). Finally, the Court observes that, prior to *Grant*, several other courts in the Second Circuit declined to apply *Konkur*'s reasoning to Section 191. *See Gamboa*, 2024WL WL 815253, at *5 (collecting cases); *see also, e.g.*, *Davis v. Banana Republic LLC*, No. 21-CV-6160 (KAM) (VMS), 2023 WL 5969597, at *7 (E.D.N.Y. Sept. 14, 2023) ("Multiple courts within the Second Circuit have recognized that *Konkur* does not constitute 'persuasive evidence' that the New York Court of Appeals would reject *Vega*'s reasoning, as *Konkur* 'considered a different section' of New York Labor Law than *Vega*.") (collecting cases).

Accordingly, the Court concludes that the New York Court of Appeals is likely to adopt *Vega*'s reasoning. As such, the Court finds that NYLL §§ 191 and 198 provide for a private right of action, and Plaintiff's Section 191 claim may proceed.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is denied in its entirety. Plaintiff's Section 191 claim shall proceed to discovery. In light of this Memorandum and Order, the Court denies Defendant's request for oral argument as unnecessary. (*See* Dkt. 18.)

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 15, 2024
　　　　Brooklyn, New York